UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES R. LEWIS,<br><br>                     Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                     Respondent. | Case No.:  3:18-cv-00911-L-KSC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE AND DENYING MOTION TO DISMISS [ECF NO. 1]** |

Petitioner, Senior Airman James R. Lewis, United States Air Force (hereinafter "Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 alleging that his due process rights were violated by the use of a propensity evidence jury instruction during his court martial, and that he received ineffective assistance of appellate counsel. Respondent filed an Answer and Return, and in the alternative Motion to Dismiss. Petitioner filed a Traverse, and Opposition to the Motion to Dismiss. The Court has considered the moving papers and exhibits, and for the reasons stated below, **DENIES** the Petition.

## I. BACKGROUND

In December 2012, Petitioner was convicted by a military tribunal at a general court martial of one count of aggravated sexual assault and two counts of wrongful sexual

conduct in violation of Article 120, UCMJ, 10 U.S.C. § 920. Petitioner was sentenced to a term of nine years confinement, forfeiture of all pay and allowances, reduction to E-1 grade, and dishonorably discharged.[1] (Petition at 5 [ECF NO. 1.]) Petitioner was granted parole in August 2017. (*Id.* at 6.)

Petitioner's case was submitted for mandatory review before the Air Force Court of Criminal Appeals ("AFCCA"), which affirmed the conviction. (Pet. at *5).* The Court of Appeals for the Armed Forces (hereinafter "CAAF") denied Petitioner a second, discretionary review. (*Id.*) In 2016 Petitioner submitted a writ of *coram nobis* to the AFCCA, which was denied. (*Id.*) The AFCCA instructed Petitioner to seek relief through a writ of habeas corpus in a federal district court. (*Id.)* Petitioner then filed a writ-appeal petition to the CAAF, which was also denied. (*Id*.)

In May 2018, Petitioner filed the instant petition for writ of habeas corpus. (Pet. at 1 [ECF NO. 1.] He seeks an order granting the writ and ordering a rehearing, or in the alternative, an order vacating and re-entering the judgment of conviction to allow a new appeal. (*Id.* at 4.)

## II. STANDARD

District courts have jurisdiction under 28 U.S.C. § 2241 to grant a writ of habeas corpus to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241). A prisoner is "in custody" for purposes of section 2241 if he is physically confined or if he is subject to parole as a consequence of his conviction. *Maleng v. Cook*, 490 U.S. 488, 491 (1989).

### A. *Jurisdiction*

As a primary matter, Respondent contends that this Court lacks jurisdiction to hear Petitioner's claims, arguing that while this Court may review claims that challenges the

---

[1] Petitioner states that on April 1, 2013, the Convening Authority approved the sentence and ordered that it be executed, except for the dishonorable discharge. (Pet. at 5).

constitutionality of a statute of conviction, it may not address claims such as Petitioner's that assert a "constitutional deviation in procedure and application of law," if military tribunals have fully and fairly adjudicated the issues. (Oppo at 5, 8-9 [ECF NO. 6.]) The government claims the issues have been fully and fairly addressed by military tribunals because the AFFCA addressed the issues Petitioner raises here when it denied his *coram nobis* petition. (*Id.*)

When a military decision has already dealt fully and fairly with an allegation that is raised in a writ petition before a federal court, the court cannot grant the writ simply to re-evaluate the evidence adduced by the military court. *Burns v. Wilson*, 346 U.S. 137, 142 (1953); *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975) ("The valid, final judgments of military courts, like those of any court of competent jurisdiction not subject to direct review for errors of fact or law, have res judicata effect and preclude further litigation of the merits.") However, "[i]n habeas corpus proceedings, a court-martial conviction may be deemed void because of constitutional defects." *Hatheway v. Sec'y of Army*, 641 F.2d 1376, 1379-80 (9th Cir. 1981)(abrogated on other grounds in *High Tech Gays v. Defense Indus. Sec Clearance Office*, 895 F.2 563 (9th Cir. 1990); *see also Parker v. Levy*, 417 U.S. 733 (1974). Federal courts may conduct habeas review where constitutional defects are so serious that they can cause "lasting, serious harm in civilian life." *Hatheway*, 641 F.2d at 1380.

In *Hatheway,* the Ninth Circuit affirmed the district court's exercise of jurisdiction over petitioner's claims that the court martial proceedings violated his due process and equal protection rights, and that Article 125 of the Uniform Code of Military Justice was unconstitutional. *See Hatheway*, 641 F.2d 1380 ("[w]e hold that in alleging that Article 125 is unconstitutional and that the court-martial proceedings violated his rights to due process and equal protection, he has alleged such fundamental defects."). The *Hatheway* court found that "although he has not been imprisoned, his conviction resulted in a dishonorable discharge that can cause 'lasting, serious harm in civilian life' and '[g]iven

the seriousness of the harm, we think constitutional defects such as he has alleged would justify holding he conviction void.'" *Id*.

Here, Petitioner claims that the use of a propensity evidence jury instruction violated his constitutional rights to the presumption of innocence and due process, and resulted in his incarceration, dishonorable discharge and loss of benefits. (Oppo at 8-9). While Petitioner is not challenging the facial constitutionality of the statute under which he was convicted, he has sufficiently alleged a constitutional defect in the court martial proceedings that would support a finding that his court martial was void, even if the claims were fully and fairly adjudicated, because the consequences of his conviction are serious and may cause "lasting, serious harm in civilian life." *Hatheway*, 641 F.2d at 1380. Accordingly, the Court finds that *de novo* review of Petitioner's constitutional claims is mandated. *Id.*; *see also Rich v. Stackley*, 2018 WL 1791887 (S.D. Cal. April 16, 2018) (Petitioner raised three constitutional challenges to his general court-martial conviction for aggravated sexual abuse of a child and court conducted *de novo* review).

**B.** *Propensity Jury Instruction*

Petitioner argues that during his court martial the panel was given a propensity jury instruction pursuant to Military Rule of Evidence 413 which advised them that they could consider evidence of one of the charged offenses as evidence of his propensity to commit another offense charged in the same case, but this instruction has since been found unconstitutional in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016) and *United States v. Hukill*, 76 M.J. 2019 (C.A.A.F. 2017). (Pet. at 2, 11 [ECF NO. 1.]) He contends that his constitutional rights were violated by the giving of the instruction, and requests that the Court grant his petition and order a rehearing so he may be tried without the instruction. (*Id*. at 3). Should the Court disagree, Petitioner requests that the Court vacate and re-enter the judgment of conviction to allow him to file a direct appeal asserting these grounds. (*Id*. at 20).

Respondent acknowledges that the propensity jury instruction used in Petitioner's court martial was found unconstitutional in *Hills*, but argues that the holding of *Hills* is

inapplicable to Petitioner because that case was decided after Petitioner's conviction, and the rule cannot be applied retroactively. (*Id*. at 9-10 [ECF NO. 6.])

In military court-martials, evidence of prior sexual assaults is admissible to show propensity under Military Rule of Evidence 413 which states: "[i]n a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any manner to which it is relevant." Mil.R.Ev. 413. Where a defendant has been found guilty or pled guilty to an offense that is used as propensity evidence in a sexual assault case, courts traditionally hold that the prior offense is admissible because the defendant is no longer presumed innocent of the prior charge. *See generally Wright*, 53 M.J. at 479.

The jury instruction regarding propensity evidence, as given in this case, states:

> Evidence that the Accused committed the offenses of sexual assault alleged in Specifications one through four of the Charge may be considered by you with regard to one another for an additional basis with regard to one another under certain circumstances. First, those offenses may have no bearing on your deliberations in relation to one another unless you first determine by a preponderance of the evidence, that is more likely than not, any of those alleged offenses of sexual assault occurred.
> If you determine by a preponderance of the evidence any of those alleged offenses occurred, even if you are not convinced beyond a reasonable doubt that the Accused is guilty of that offense, you may nonetheless then consider the evidence of that offense for its bearing on any matter to which it is relevant in relation to the remainder of those offenses of sexual assault; that is Specifications one through four of the Charge.
> You may also consider the evidence of those other offenses for its tendency, if any, to show the Accused's propensity or predisposition to engage in acts of sexual assault. You may not, however, convict the Accused of any offense solely because you believe he committed some other offense or solely because you believe the Accused has a propensity or predisposition to engage in acts of sexual assault.

(Tr. at 97-98 [ECF NO. 10-6.])

In *Hills,* the court held that the use of charged, but contested, conduct to show propensity to commit other charged conduct in the same case violated the accused's constitutionally protected right to the presumption of innocence. *Hills*, 75 M.J. at 357. The *Hills* Court stated "[i]t is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent." *Id*. at 356. In *United States v. Hukill*, the CAAF further clarified the holding of *Hills*, holding that evidence of a charged and contested offense of which an accused is presumed innocent cannot be used to demonstrate the propensity of the accused to commit a separately charged offense in the same case regardless of the number of victims, the forum or whether the events are connected. *United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2016).

Petitioner acknowledges that *Hills* was decided after his direct appeal was concluded, but contends that the *Hills* rule applies retroactively and he should be afforded an opportunity to have it applied to his conviction and sentence. (Pet. at 11,16 [ECF NO. 1.]) Respondent counters that the AFCCA conducted an analysis the retroactivity of *Hills*, and determined the holding announced a "new rule" that did not apply retroactively. (Oppo. at 9 [ECF NO 6.])

The Supreme Court has established a three-step process for determining whether a constitutional rule of criminal procedure may be applied to cases on collateral review. *Beard v. Banks*, 542 U.S. 406 (2004); *Lambrix v. Singletary*, 520 U.S. 518, 527–528 (1997). First, the court must determine when the conviction became final. Second, the court must survey the legal landscape as it existed at the time a defendant's conviction became final to determine whether the rule was "dictated by precedent" and whether it would have been "apparent to all reasonable jurists" that the rule was the logical extension of preceding jurisprudence. *Lambrix,* 520 U.S. at 527-28; *United States v. Chan*, 792 F.3d 1151, 1155 (9th Cir. 2015). "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Chaidez v. United States*, 568 U.S. 342, 347 (2013)(emphasis in original). A decision that alters the

existing legal landscape by announcing a new rule will apply "to all criminal cases still pending on direct review" but only in limited circumstances to convictions that are already final. *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004). Third, the court must determine if either of the two exceptions to the general rule against retroactive application to cases on collateral revue applies. *Beard*, 542 U.S. at 406.

As to the first prong, Petitioner's conviction became final when the CAAF denied review on February 10, 2015. *See Loving v. United States*, 64 M.J. 132 (CAAF 2006)("We hold that a military justice case is final for purposes of *Teague* when 'there is a final judgment as to the legality of the proceedings' under Article 71(c), UCMJ. Article 71(c)(1), UCMJ.") *Hills* was decided on June 27, 2016, therefore it is only applicable to Petitioner's case if it can be applied retroactively.

Second, the AFCCA, in its denial of Petitioner's writ for *coram nobis*, conducted a thorough analysis of the legal landscape that preceded *Hills* and determined that the rule it announced was new:

> *Hills* was not decided until [June 27, 2016]. However, the CAAF had previously rejected a facial constitutional challenge to Mil. R. Evid. 413 in *United States v. Wright*, 53 M.J. 476, 483 (C.A.A.F. 2000) and suggested in dicta that Mil. R. Evid. 413 could be applied to evidence of charged as well as uncharged offenses of sexual assault to show propensity. *See United States v. Burton*, 67 M.J. 150, 152 (C.A.A.F. 2009) ("The Government may not introduce similarities between a charged offense and prior conduct, whether charged or uncharged, to show . . . propensity without using a specific exception within our rules of evidence, such as [Mil. R. Evid.] 404 or 413."). In addition, the version of the Military Judges' Benchbook in use at the time the judgment in Petitioner's case became final included a specific model instruction regarding the use of a charged instance of sexual assault as propensity evidence under Mil. R. Evid. 413. *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27–9, ¶ 7–13–1, Note 4.2 (10 Sep. 2014). Moreover, in the same year that Petitioner's case became final, three Courts of Criminal Appeals specifically held that evidence of charged offenses of sexual assault could properly be used under Mil. R. Evid. 413, only to be overruled by *Hills* the following year. *United States v. Barnes*, 74 M.J. 692, 697–98 (A. Ct. Crim. App. 2015), *rev. den.*, 75 M.J. 27 (C.A.A.F. 2015); *United States v. Bass*, 74 M.J. 806, 815 (N–M. Ct. Crim. App. 2015); *United*

*States v. Maliwat*, No. ACM 38579, 2015 WL 6655541, at *5-6, 2015 CCA LEXIS 443, at *14-15 (A.F. Ct. Crim. App. 19 Oct. 2015), *rev'd*, 76 M.J. 128 (14 Feb. 2017). Under these circumstances, we find the CAAF's decision in *Hills* broke new ground and would not have been "apparent to all reasonable jurists" in February 2015.

*Lewis v. United States*, 76 M.J. 829, 835 (A.F. Ct. Crim. App. 2017).

Up until the *Hills* decision, military caselaw and procedure regularly allowed evidence of a charged offense to be used to show an accused's propensity to commit another charged offense, whether the accused had pled guilty to the charged offenses or not. *See generally*, *Burton*, 67 M.J. at 152-53 (C.A.A.F. Jan. 15, 2009); *Barnes*, 74 M.J. at 697-98 (A.C.C.A. May 8, 2015).

Petitioner urges that *Hills* did not announce a new rule, but instead it merely clarified and narrowed the holding announced of *United States v. Wright*, where the CAAF upheld the constitutional validity of Rule 413 and held that evidence of charged conduct to which the defendant had pled guilty is admissible to show propensity to commit other similar charged conduct. (Pet. at 14 [ECF NO. 1.]) Petitioner claims that the court in *Hills* said that the result in that case "seem[ed] obvious" in light of *Wright.* (Pet. at 15.)

Indeed, the *Hills* court stated that the *Wright* decision foreshadowed its holding: "[a]s we noted in *Wright* … M.R.E. 413 'would be fundamentally unfair if it undermines the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt.'" *Hills,* 75 M.J. at 356. The court in *Hills* noted that, "[t]hough a question of first impression, it seems obvious that it is impermissible to utilize M.R.E. 413 to show that charged conduct demonstrates an accused's propensity to commit ... the charged conduct." *Id.* at 353. The *Hills* Court noted that use of charged misconduct in this manner did not comport with the purpose and structure of M.R.E. 413, or its counterpart, Federal Rule of Evidence 413, which were drafted to address the use of uncharged, not charged, conduct in sexual assault cases. *Id*. Although the *Hills* court concluded that its holding was foreshadowed by the purpose and intent of the rule, the use of charged conduct to show propensity was commonplace, therefore the legal landscape at the time would not

8

have alerted all reasonable jurists of the Court's holding. For these reasons, the Court finds that *Hills* announced a new rule.

Third, and finally, whether the new rule announced in *Hills* can be applied to Petitioner's case is dependent on whether it falls within one of the two recognized exceptions to the general prohibition against retroactive application of new rules. The parties agree that the question of retroactivity is governed by the holding in *Teague v. Lane*, which dictated that "[u]less they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. 288 (1989). A new rule may be applied retroactively if it is substantive. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes .... In contrast, rules that regulate only the manner of determining the [accused's] culpability are procedural." *Schriro*, 542 U.S. at 353.

Although the Ninth Circuit has yet to weigh in on the issue, the Tenth Circuit, which frequently addresses habeas petitions from military personnel, held that *Hills* announced a new procedural rule that does not apply retroactively. *See Evans v. Horton*, 2018 WL 6305654 (10th Cir. 2018). As the *Evans* Court held, *Hills* did not alter the range of conduct or class of persons that the law punishes or modify the elements of the charged sexual assault offenses, therefore it is not a substantive rule within the meaning of *Teague*. *Shriro* at 353. Instead, it invalidated an existing evidentiary procedure used to introduce evidence of other charged but not admitted, sexual misconduct to show propensity to commit charged conduct. *Id*. at 352. Therefore, *Hills* announced a new criminal procedural rule.

Retroactive application for new rules of criminal procedure is only permissible for "watershed rules." *Shriro*, 542 U.S. at 351-52. "A rule is viewed as a watershed rule if it is necessary to prevent an impermissibly large risk of an inaccurate conviction and if it alters our understanding of the bedrock procedural elements essential to the fairness of the proceeding." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (internal quotations and citations omitted). A new procedural rule must be "fundamental" in more than an abstract

sense; it must be one "'without which the likelihood of an accurate conviction is seriously diminished.' ... This class of rules is extremely narrow, and 'it is unlikely that any ... 'ha[s] yet to emerge.'" *Schriro*, 542 U.S. at 351-52. The rule in *Hills* does not qualify as a watershed rule because it was not "necessary to prevent an impermissibly large risk of an inaccurate conviction," but instead is a rule that limits one factor that could have influenced the outcome of a trial. *Whorton*, 549 U.S. at 407 (2007).

Petitioner argues that the CAAF and CCA have set aside many convictions and authorized new trials where the government employed the unconstitutional propensity instruction at issue in this case. (Pet. at 13 [ECF NO 1.) However, those cases were heard on direct appeal permitting application of the new *Hills* rule, and the convictions were only overturned in cases where the evidence was not robust enough to be certain that the verdict was not influenced by the propensity jury instruction. *See generally United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017); *United States v. Robertson*, 77 M.J. 365 (C.C.A 2018); *United States v. Moynihan*, 2018 WL 6334226 (C.C.A. 2019). Even if this Court applied the *Hills* rule to Petitioner's case and found constitutional error, such error is harmless because the evidence was sufficient to conclude that the ve115-rdict was supported regardless of the jury instruction. *Hukill*, 76 M.J. at 222 ("where such constitutional error exists, the Government must 'prove there was no reasonable possibility that the error contributed to [the] verdict.'") In so determining, the Court balances the sufficiency of the evidence against the prosecution's reliance on propensity evidence. *Id*.

Here, the victims convincingly testified about the events of the assaults during the court martial. Senior Airman K testified that in late 2010 Petitioner came to her dorm room seeking emotional support because his wife was suicidal. (Tr. at 90-91) [ECF NO 10-7.]) She explained that she had taken cold medicine which made her drowsy before he came over, so she put on a pot of coffee but fell asleep at her kitchen table, only to wake up in her bed with Petitioner having sex with her. (*Id*.) She stated:

A: I woke up in pain.

Q: Why were you in pain?

10

A: He was inside me. His penis was inside me and I had never had sex before and it hurt.

(*Id*. at 91.)

Similarly, Airman Y testified that after having dinner and watching a movie with a group of colleagues including Petitioner, he helped her bring laundry to her dorm room and the two watched a movie with her on her bed and him on the couch. (Tr. at 79-80 [ECF 10-8.]) Airman Y stated that she fell asleep on the bed and woke up with Petitioner laying on her bed and touching her breast. (*Id*.) She attempted to move away from him, but he continued touching her breast and vagina area over her clothes. (*Id*. at 80-81). She stated he moved her shorts and underwear to the side and then "he penetrated me with his fingers and he ended up climbing on top of me and penetrated me with the tip of his penis three or four times." (*Id*. at 81). When asked why she didn't scream or fight him, she stated "I had been molested and sexually assaulted when I was younger so that is just my natural reaction" and she "did not really know what he was capable of." (*Id*.)

Airman D testified that in December 2010, she and her roommate, along with Petitioner, were drinking alcohol and after becoming intoxicated, she and her roommate went to their respective bedrooms to go to sleep. (Tr. at 2 [ECF NO 10-8.]) Airman D thought Petitioner had departed when she went to sleep, but she woke up to find Petitioner on top of her with her pajamas down around her knees and him "inside her." (*Id*. at 3). When asked to clarify her statement, Airman D testified:

Q: What does that mean?
A: His penis was inside my vagina.
Q: Was this occurring at the time you opened your eyes and woke up?
A: Yes, Sir.

(*Id*.)

Airman B testified that on June 16, 2012, she and her roommate, Jacquelyn Tobin, returned to their dorm after an evening of heavy social drinking, with Petitioner along as Tobin's date. (Tr. at 134 [ECF NO. 10-8.]) After Airman B went to bed, she woke up to

11

find Petitioner naked and kneeling over her, with Tobin yelling at Petitioner to leave the room. (*Id*.) Later in the evening, Airman B awoke to someone in her bed who she assumed was her boyfriend, who was touching her and tried to roll her over on to her stomach. (*Id*.) Airman B turned toward Petitioner and saw him lick his fingers, "then he moved his hand underneath the sheets at which point I am assuming …. he was masturbating." (*Id*.) Senior Airman B's testimony was supported by Airman First Class Christopher Schick and Jacquelyn Tobin, lending credence to her description of the events. (Tr. at 18 [ECF NO 10-9.]; Tr. at 5-8 [ECF NO. 10-6.])

On cross examination, defense counsel pointed to inconsistencies in the witness statements, and explored the possibility that each of the women could not accurately recall the events due to being drunk or medicated. (Tr. at 16-28 [ECF NO 10-8.]) Counsel asked whether the victims conspired to accuse Petitioner, and questioned whether any of the women had a romantic or sexual interest in Petitioner.( Tr. at 113-123 [ECF NO 10-8.])

The prosecutor in closing emphasized at the outset that the government had the burden to prove each offense beyond a reasonable doubt:

> Now the government owns both legally and morally the responsibility to prove each one of those offenses beyond the reasonable doubt. And that is a responsibility that we embrace in this case. Because the evidence that you heard in this court, the actual evidence in this case established beyond a reasonable doubt that he committed each one of those offenses.
> Since we have that burden, it is appropriate for us to start the discussion with just that. Each offense, each element, and evidence which shows that those elements are met beyond a reasonable doubt.

(Tr. at 101 [ECF NO. 10-6.])

After summarizing the testimony of each victim, the prosecutor stated that there was proof beyond a reasonable doubt that Petitioner committed these crimes "as to each one of these circumstances, each individual, each charged individual." (*Id*. at 114).

The prosecutor then instructed the panel it could consider propensity evidence, explaining:

12

> The Military Judge has instructed you that you could take the facts of the similarity of each of these offenses over time to show that this Accused, Airman Lewis, has the propensity to engage in this type of crime. He has the propensity to engage in sexual assault. It's not proof in itself to commit each of these offenses, but it ties them together.
>
> It is the glue that established the foundation proof beyond a reasonable doubt. The reasoning [sic] you can assume that he has the propensity to engage in misconduct is because of the similarities of each of these activities. Each case, he enters a woman's room at night, when they are not in the position to communicate on their own.
>
> Airman D's case because of alcohol. Airman K 's case because of sleep medication. Airman Y because of the assumption she was asleep and with Airman B the same. Each of those situations he engaged in conduct and did so each and every time. It established he has the propensity and desire to do just what he did in each case, and he did, time after time, after time, after time after time, he committed each one of these offenses.
>
> Airman D, 21 years old. First duty assignment, Barksdale Air Force base. A woman in her bed, he pulls down her pants, he puts his penis in her vagina while she's asleep, and committed the offense. Airman K, 24 years old. A woman in her bed, he puts his penis in her vagina. Committed the offense. Airman Y, asleep in her bed, gropes her breast, gropes her vagina, pushes his penis against her vagina. He committed the offense. Airman B, asleep in her bed. He gropes her breasts and vagina. Committed the offense. Add a little extra to it, he decides to masturbate in front of her.
>
> The Accused is a serial offender. The evidence establishes beyond a reasonable doubt that he committed each one of these offenses.

(Tr. at 115-16 [ECF NO 10-6.])

Although it is true that the prosecution drew comparisons and even suggested that those similarities were the "glue" that formed the foundation of reasonable doubt, the instructions repeatedly reminded the jurors that the government had the burden to prove each charge beyond a reasonable doubt:

> You may not, however, convict the Accused of any offense solely because you believe he committed some other offense or solely because you believe the Accused has a propensity or predisposition to engage in acts of sexual assault.
>
> In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist. The Accused

13

may be convicted of an alleged offense only if the prosecution has proven each element beyond a reasonable doubt.

Each offense must stand on its own and proof of one offense carries no inference that the Accused is guilty of any other offense. In other words, proof of one sexual assault offense creates no inference that the Accused is guilty of any other sexual assault offense. However, it may demonstrate that the Accused has a propensity to commit that type of offense. The prosecution's burden of proof to establish the Accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged.

(Tr. at 98 [ECF NO 10-6.])

Similarly, the propensity instruction cautioned that "[e]ach offense must stand on its own and you must keep the evidence of each offense separate. Stated differently, if you find or believe that the Accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any other offense." (Tr. at 96 [ECF NO 10-6.]) Despite the prosecution's reliance on propensity evidence in closing argument, there was sufficient corroborated testimonial evidence, along with repeated instruction that the panel had to find each charged offense supported by proof beyond a reasonable doubt, to conclude that even if it was error for the panel to be instructed that it could consider propensity evidence, any error was harmless. *Chapman v. California*, 386 U.S. 18, 24 (1967).

For the foregoing reasons, the Court finds that *Hills* announced a new rule of criminal procedure which does not fall under an exception warranting retroactive application to Petitioner's case. Furthermore, there was no reasonable possibility that any alleged error contributed to the verdict in light of the substantial evidence and instructions presented at the court martial. Therefore, the Court **DENIES** Petitioner's request for a new trial based on the retroactivity of *Hills* to his case.

**C.** *Ineffective assistance of counsel*

Petitioner contends he received ineffective assistance of counsel under the Sixth Amendment because his appellate attorney failed to raise a challenge to the propensity jury

instruction on appeal despite the issue being preserved during his court martial. (Mot. at 18 [ECF NO. 1.]) According to Petitioner, this is the first opportunity he has had to raise this argument because the military courts did not have jurisdiction to hear this claim. (*Id*. at 13-14).

Respondent counters that Petitioner is foreclosed from raising this issue here because he did not first raise it before the military courts, specifically in either his writ of *coram nobis* or on his writ appeal. (Oppo. at 15 [ECF NO 6.]) Should the Court disagree, Respondent argues that Petitioner cannot meet his burden to show he received ineffective assistance of counsel because it was reasonable for appellate counsel to decline to raise this issue on appeal considering that this use of charged conduct to show propensity was settled law and accepted practice in military sexual assault trials. (*Id*. at 12). Even if appellate counsel should have raised the issue on appeal, the government contends that Petitioner cannot show there would have been a different result, as required to demonstrate ineffective assistance of counsel. (*Id*.)

For this Court to review Petitioner's claim, he must 1) allege a violation of a constitutional right, and 2) exhaust his remedies. *Khalsa v. Weinberger*, 779 F.2d 1393, 1398 (9th Cir. 1985). A claim of ineffective assistance of counsel necessarily implicates the constitutionally protected right to counsel under the Sixth Amendment, therefore Petitioner has met the first requirement. With regard to exhaustion, a plaintiff's failure to raise federal constitutional claims in the military court system will generally procedurally default that plaintiff from raising those issues when collaterally attacking a court martial, absent a showing of cause and prejudice. *Davis v. Marsh*, 876 F.2d 1446, 1448 (9th Cir. 1989).

Although Petitioner claims he could not have raised the issue sooner, it appears the AFCCA could have heard that claim. The AFCCA in its order denying Petitioner's writ of *coram nobis* provided that, "[t]he All Writs Act, 28 U.S.C. § 1651(a), grants this court authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction." *Lewis*, 76 M.J. at 833. However, ineffective assistance of counsel can constitute cause for

15

overcoming a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986)(ineffective assistance of counsel is cause for procedural default.) Therefore, the Court will consider his claim.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction. First, petitioner must show that counsel's performance was deficient. *Id*. at 687. In order to prove deficient performance, petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. In other words, petitioner must demonstrate that counsel's representation fell below an *objective* standard of reasonableness, considering all the circumstances presented in a particular case. *Id.* at 688. The Supreme Court further elaborated that there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id*. at 699.

The second prong of the *Strickland* test requires petitioner to prove that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. In order to prove prejudice, petitioner must demonstrate that counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*. Otherwise stated, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's defective assistance, the result of the proceeding would have been different. *Id*. at 694.

Petitioner has not demonstrated that he received deficient representation from appellate counsel. First, there was no obvious error in appellate counsel's failure to raise the jury instruction issue on appeal because guiding precedent up to and around the time of Petitioner's appeal indicated that the jury instruction used at Petitioner's court martial was constitutional, therefore it would have appeared futile to raise the claim. *See Rupe v. Wood,* 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance"). Further, the jury instructions were directly from a military judge's handbook which guided the tribunal. If anything, bringing the argument up would have been directly contrary to authority at that time.

As to the second prong, even if Petitioner's attorney committed error by failing to raise the challenge to the jury instruction, Petitioner would have to show that, "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" to demonstrate he suffered prejudice. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Petitioner claims that military courts have reversed many convictions on the basis of the instruction, therefore his case would have turned out differently had his attorney challenged the instruction on appeal. (*See* Pet. at 13 [ECF NO 1.]) Respondent counters that although *Hills* has been applied to a variety of military cases, many upheld the original conviction finding that evidence of guilt was overwhelming and any instructional error was harmless. (Oppo at 17 [ECF NO 6 .])

The Court must view the instruction "in the context of the overall charge" including "testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Cupp*, 414 U.S. at 146-47. The propensity instruction was but one factor the jury weighed when determining Petitioner's guilt. As noted above, the testimony of the witnesses was compelling in the present case. The panel was instructed it must convict only if it found beyond a reasonable doubt that Petitioner committed each of the alleged offenses. Though the prosecutor argued that the panel could consider the similarities of the charges pursuant to the propensity instruction, counsel's argument also noted that each charge must be proven beyond a reasonable doubt. Taken as a whole, the record demonstrates that the instruction did not so infect the entire trial that Petitioner's conviction violated his due process rights. *Id*. Petitioner has failed to demonstrate that he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Therefore, this Court **DENIES** Petitioner's ineffective assistance of counsel claim.

//
//
//
//

## III. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice and **DENIES** Respondent's Motion to Dismiss as moot.

**IT IS SO ORDERED.**

Dated: October 21, 2019

Hon. M. James Lorenz
United States District Judge